Cleo **KOSTANTAS, Individually and as Administratrix of the Estate of Andreas G. Kostantas, Deceased, Plaintiff-Appellant,**

v.

**EXXON COMPANY, U.S.A., a Division of Exxon Corporation, Defendant-Appellee.**

No. 80–2307.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1981.

Brown & Todd, Alton Todd, Alvin, Tex., for plaintiff-appellant.

Melinda F. Harmon, Houston, Tex., for defendant-appellee.

Before GEE and RUBIN, Circuit Judges, and SPEARS,* District Judge.

GEE, Circuit Judge:

Cleo Kostantas, the surviving spouse and personal representative of the Estate of Andreas Kostantas, brought this action pur-

defective condition, if any, was a producing cause of the occurrence in question? We do not.

* Of the Western District of Texas, sitting by designation.

suant to 15 U.S.C. § 2801 et seq., the Petroleum Marketing Practices Act (PMPA), against Exxon Company, U.S.A. (Exxon), alleging that Exxon wrongfully terminated its franchise relationship with her late husband, Andreas Kostantas. The district court dismissed the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief could be granted. We affirm.

On October 3, 1978, Andreas Kostantas and Exxon executed a lease and franchise agreement and entered into a one-year franchise relationship in connection with a service station in Galveston, Texas. The lease and franchise agreement specifically provided for termination upon the death of Andreas Kostantas.[1] On August 12, 1979, Andreas Kostantas died. On or about August 20, 1979, Exxon changed the locks on the station and sometime in early September leased the building to another individual. Exxon did not notify Mrs. Kostantas of Exxon's termination of the franchise relationship with her husband.

The PMPA permits termination of a franchise agreement for stated reasons and then requires notice to effect that termination. 15 U.S.C. § 2802, § 102(b). Because the Act does not specify death as a ground for termination, Mrs. Kostantas contends that Exxon could not terminate the franchise relationship upon her husband's death. She argues, alternatively, that if death is a ground for termination, the notice requirements of the Act were not met.

 Neither of these contentions is consistent with the purpose of the PMPA. First, the Act is designed to protect franchisees from arbitrary and discriminatory termination or nonrenewal of a franchise for failure to comply with the marketing policies of a franchisor. S.Rep.No. 95–731, 95th Cong., 2d Sess. 15, reprinted in [1978] U.S.Code Cong. & Ad.News, 873, 874. Nothing in the Act, however, requires a franchisor to create a permanent estate of inheritance in the franchise, thus disabling itself from selecting those with whom it wishes to deal. Such a result is foreign to the manifest purpose of the Act, to regulate the relationship between persons who have chosen to associate themselves. Death is not a circumstance that the Act was designed to cover.

Second, the Act defines the types of events that require notice, and those are events about which there might be some factual dispute to which the franchisee could respond before termination or nonrenewal. 15 U.S.C. § 2802, § 102(b)(2). For example, whether a person is "severely disabled" is a fact question, and the notice requirements give the franchisee a chance to respond with evidence that he is not so disabled. This safeguard is inapplicable when death is the terminating event.

The PMPA seeks to prevent abusive trade practices by franchisors, recognizing the disparity of bargaining power between the franchisors and the franchisees. The Act was not designed to create what is tantamount to a permanent estate in the franchise relationship. For these reasons, we conclude that the Act does not prohibit a contractual provision providing for termination upon the death of a franchisee. We thus affirm the dismissal for failure to state a claim upon which relief could be granted.

AFFIRMED.

---

1. Paragraph 13 of the lease provides: "Termination: . . . In the event of the death of Lessee . . ., this lease shall terminate automatically. Upon any termination or expiration of this lease, Exxon may without formal demand or notice of any kind re-enter said premises and remove all persons and property therefrom. . . ."

Paragraph 18 of the franchise agreement provides:

Breach and Termination: (a) It is agreed that if . . . Buyer dies . . . then Seller may at any time thereafter (immediately or otherwise) terminate this contract by giving Buyer written notice of Seller's election so to do and this contract shall expire and come to an end on the date fixed in said notice as if said date were fixed herein for the expiration of the term hereof.

No issue was raised as to Exxon's compliance with the notice provisions of this paragraph. Therefore, we do not reach the issue of whether Exxon breached its agreement in failing to provide such notice.