Hector **ROMERO RODRIGUEZ**, Plaintiff,

v.

**ESSO STANDARD OIL COMPANY and Exxon Corporation**, Defendants.

Civ. No. 85–1575 (JAF).

United States District Court, D. Puerto Rico.

April 29, 1986.

Jesus Hernandez Sanchez, Santurce, P.R., for plaintiff.

John Malley Vega, San Juan, P.R., for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

This is an action instituted under the provisions of the Petroleum Marketing Practices Act of 1978, 15 U.S.C. Secs. 2801–2806. Plaintiff Hector Romero-Rodriguez alleges that Esso Standard Oil Company and Exxon Corporation[1] terminated their franchise agreement in violation of the above-referred law. Defendant has moved for summary judgment, which has been timely opposed by plaintiff. After a careful study of the pleadings and documents

---

1. Codefendant Exxon Corporation has not been served with summons. More than 120 days have elapsed since the filing of the complaint and, therefore, the complaint is DISMISSED as to said codefendant. Fed.R.Civ.P. 4(j).

on file, we hereby order entry of summary judgment on behalf of defendant.

## I.

On July 1, 1978, Hector Romero-Rodriguez entered into a franchise contract with Esso Standard Oil Company (hereinafter referred to as "Franchisor"), under which Romero-Rodriguez (hereinafter referred to as "Franchisee") obtained the right to use and exploit an ongoing business operation of a gas station at the town of Hatillo. The business operation consisted of retail sales of gasoline, equipment, car wash, and other gas station services. Franchisor would charge a monthly nominal fee of $400 for the lease of the physical facilities and a separate charge for gasoline and/or other products to be sold.

On February 21, 1984, the Department of Transportation and Public Works of the Commonwealth of Puerto Rico notified Franchisor that the government was going to expropriate about 162.50 square meters of the land where the gas station was located. This condemnation would adversely affect the area where the gas station pumps are located, as reflected by the land survey appearing on file. On December 14, 1984, and due to the eminent domain action taken by the government, Franchisor notified Franchisee the termination of the contract as authorized by provisions of 15 U.S.C. Sec. 2802(c)(5). This was to be effective on the date that the government required that the premises be vacated. By means of a subsequent letter dated July 18, 1985, Franchisor informed that the effective date of termination was July 31, 1985. At this point in time, Franchisee, being confronted with the affirmative action taken by Franchisor, decided to file the present action. The complaint states that Franchisor's acts are in violation of the Petroleum Practice Act, since Franchisor did not comply with the notification requirements of 15 U.S.C. Sec. 2804 nor had reasonable grounds to terminate the franchise agreement. Said arguments are not sustained by the documentation contained in the file.

At this stage of the litigation process, Franchisor's motion for summary judgment requires that we view the evidence in the light most favorable to the plaintiff. *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1078 (1st Cir.1986); *Hifai v. Shell Oil Co.*, 704 F.2d 1425, 1428 (9th Cir.1983). The material facts in the present case are not in dispute. Plaintiff brings forward as an alleged issue of fact the "illegality" of Franchisor's actions as it relates to his allegation that the property condemnation proceeding effect was to enhance the business activity at a long-term range. This type of factors cannot be taken into consideration in the context of a case like the present one.

## II.

The Petroleum Marketing Practices Act (PMPA), 15 U.S.C. Secs. 2801–2806, was enacted to provide an equalizing effect in negotiations between an individual franchisee in the petroleum market and the petroleum industry. *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304–05 (2nd Cir.1986); *Halder v. Standard Oil Co.*, 642 F.2d 107, 109 (5th Cir.1981). In providing a legislative scheme to influx arm-length negotiations between the franchisor and the franchisee, Congress focused on the areas of nonrenewal or arbitrary termination of a franchise agreement. The net product of this congressional concern were sections 102 and 104 of the Act. S.Rep. No. 731, 95th Cong.2d sess., *reprinted in* 1978 U.S. Code Cong. & Ad.News 873, 875; 15 U.S.C. Secs. 2802, 2803. Section 2802 lists valid bases under which a termination of the franchise agreement will be deemed reasonable. In question here is section 2802(b)(2)(C) which establishes as a valid ground for termination:

> The *occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable,* if such event occurs during the period the franchise is in effect and the franchisor

first acquired actual or constructive knowledge of such occurrence. (Emphasis supplied).

The phrase "event which is relevant to the franchise relationship and as a result of which termination of the franchise or non-renewal of the franchise relationship is reasonable" is given specific meaning by subsection 2802(c), which lists an illustrative set of twelve (12) circumstances under which the occurrence will be deemed reasonable. The occurrence of a condemnation, be it either partial or whole, of the premises franchised is specifically classified as an event relevant to the franchise which deems the termination as reasonable. 15 U.S.C. Sec. 2802(c)(5).[2] The assertion and evidence brought by a franchisor of one of these listed grounds stops the court's inquiry as to the reasonableness of the event. 15 U.S.C. Sec. 2805(c); *Lugar v. Texaco, Inc.*, 755 F.2d 53, 57–58 (3rd Cir. 1985); *Hifai v. Shell Oil*, 704 F.2d at 1429; *Veracka v. Shell Oil Co.*, 655 F.2d 445, 448 (1st Cir.1981); *Russo, Getty Service Station v. Texaco, Inc.*, 630 F.Supp. 682 (E.D. N.Y.1986). In *Lugar v. Texaco, Inc.*, 755 F.2d at 57, the Third Circuit expressed that this was the proper standard based on the legislative history of the PMPA, since the Senate Report expressly stated:

[T]he enumerated list is intended to provide a measure of Congressional intent with respect to the meaning of this statutory standard. For that reason the term "includes events such as" is utilized. Thus, a judicial determination may be made that an event, *other than one enumerated in this list,* or an event similar but not identical to one enumerated in the list, constitutes an event which is relevant to the franchise relationship as a result of which termination or non-renewal is reasonable. However, events *which are not* enumerated in subsection

(c) must be carefully scrutinized by the courts. (Emphasis supplied). S.Rep. No. 731, 95th Cong., 2d sess. 38, *reprinted in* U.S. Cong. & Ad.News at 896.

Here, 15 U.S.C. Sec. 2802(c)(5) is of application. Condemnation in whole or in part of the marketing premises pursuant to the power of eminent domain has taken place. We hold that it is immaterial that the Franchisee may believe that the condemnation is beneficial to the leased/franchised premises in the long run. The PMPA does not require a Franchisor to suffer a period of business loss caused by a condemnation.

### III.

15 U.S.C. Sec. 2804 requires that prior to termination the franchisor must provide notice. Said notification must satisfy the requirements set forth in section 2804, to wit:

(a) shall be in writing

(b) posted by certified mail or personally delivered to the franchisee

(c) contain a statement of intention to terminate the franchise

(d) the date on which such termination takes effect, and

(e) the summary statement prepared under 2804(d) and 2804(c)(3)(C).

An examination of the documents on file shows that the Franchisee was duly notified in writing, by certified mail, on December 14, 1984, of Franchisor's intention to terminate the contract. As a date for effectiveness of the action, Franchisor stated that the effective date of termination would depend on when the government demanded that the property be vacated; which date came to be July 31, 1985. A final letter of confirmation was sent to plaintiff on July 18, 1985. Plaintiff was fully notified of the ongoing condemnation proceedings and of the fact that as soon as

---

**2.** Said section establishes that:

(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

....

(5) Condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain.

the government claimed the property the franchise agreement was terminated.

On this record, defendant's request for summary judgment shall be GRANTED. Judgment dismissing the complaint shall be entered accordingly.

IT IS SO ORDERED.