**DANIEL S. BOSCHERT, INC.**

v.

**SHELL OIL COMPANY.**

No. CA3–86–788–F.

United States District Court,
N.D. Texas,
Dallas Division.

June 11, 1987.

James L. Irwin, of Irwin, Johnson & Kaskie, Dallas, Tex., for plaintiff.

William G. Lowerre, Shell Oil Legal Dept., Houston, Tex., for defendant.

## ORDER

ROBERT W. PORTER, Chief Judge.

This case is before the Court on Defendant's Motion for Summary Judgment. Having reviewed the motion, the response thereto, the pleadings and evidence on file, and the applicable law, the Court is of the opinion the motion must be granted.

Plaintiff here complains that Defendant Shell Oil violated the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.*, when it terminated its franchise agreement with Plaintiff in 1985. The facts are essentially uncontroverted. Plaintiff and Defendant had a franchise agreement for the service station located at 7026 South Beckley, Dallas, Texas. This property was leased to Shell from a third party, and the franchise agreement was entered into between Plaintiff and Defendant with the understanding that, at the expiration of the underlying lease, Shell might decide not to renew it. At the conclusion of the lease, the underlying lease was not renewed and the franchise agreement was terminated. Instead, Defendant began the process of opening a new service station at a location across the street, at 7027 South Beckley. The new station was to be operated by Defendant, and not as a franchise.

The PMPA was intended by Congress to balance "the competing interests of fuel franchisors and their dealers." *Lugar v. Texaco, Inc.*, 755 F.2d 53, 59 (3d Cir.1985); *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir.1987). Numerous detailed obligations are imposed under the statute, and specific provision is made for situations which, under the statute, reasonably justify termination or non-renewal of a franchise agreement.

Here, Defendant relies upon a specifically enumerated event as justification for its non-renewal of the franchise agreement with Plaintiff:

> (2) For purposes of this subsection, the following are grounds for termination of a franchise or non-renewal of a franchise relationship:
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect....

15 U.S.C. § 2802(b)(2)(C). The statute further defines "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or non-renewal of the franchise relationship is reasonable," by citing examples of events which Congress deemed would satisfy this requirement. Among these examples is the situation relied upon by Defendant, the "loss of the franchisor's right to grant the right to grant possession of the leased marketing premises through expiration of an underlying lease" if proper notice has been given the franchisee. *See* 15 U.S.C. § 2802(c)(4).

■ There is no dispute that the underlying lease did indeed expire. Further, courts have held that "[e]xpiration of the underlying lease could occur under a variety of circumstances *including, for example, a decision by the franchisor not to exercise an option to renew the underlying lease.*" *Lugar,* 755 F.2d at 56 (emphasis in original) (citing Senate Report on Petroleum Marketing Marketing Practices Act at 38, 1978 U.S. Code Cong. & Ad. News at 873, 896.) Clearly, the expiration

of the underlying lease here, notwithstanding Shell's decision not to renew the underlying lease, constitutes an event relevant to the franchise relationship as specified by the PMPA.

Plaintiff argues, however, that Defendant's subsequent opening of a new station under company rather than franchise (i.e., Plaintiff Boschert) management constitutes a violation of the Act. Plaintiff also contends that he was promised the franchise for the new station, and that this violated a duty of good faith business judgment owed by Defendant.

■ Although there is summary judgment evidence that Plaintiff may reasonably have believed that he would hold the franchise on the new service station, under the PMPA, this is immaterial. If an event falls within those specifically listed under § 2802(c), "termination is conclusively presumed to be reasonable as a matter of law. Once having ascertained that an event is encompassed by one of the twelve enumerated events, a court need make no further inquiry as to the reasonableness of the termination." *Russo v. Texaco, Inc.,* 808 F.2d 221, 225 (2d Cir.1986) (citing *Lugar v. Texaco, Inc.,* 755 F.2d 53, 59 (3d Cir.1985)). As stated above, the expiration of the underlying lease and Shell's non-renewal of that lease constitute an event which is relevant to the franchise relationship, and is therefore conclusively presumed to have been reasonable under the Act.

■ The PMPA does not specifically address the precise situation before the Court today, however. Here, although the lease for the property at 7026 South Beckley expired in a way contemplated by Congress, the franchisor was able to replace, more or less, those premises with a lot across the street. The case law and legislative history do not address this situation, and so this Court must look to rules of construction for guidance.

In determining whether Congress intended to prohibit franchisors from acting as Shell did in replacing one property with another in close proximity, it must be remembered that the PMPA imposes many

requirements on franchisors which were not previously imposed by the common law. Because the Act "constituted a diminution of prior rights of franchisors, ... [it] thus should not be extended beyond the Act's language and purpose." *Russo v. Texaco, Inc.*, 630 F.Supp. 682, 687 (E.D.N.Y.1986) (citing *Checkrite Petroleum, Inc. v. Amoco Oil Co.*, 678 F.2d 5, 8 (2d Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982) ("Strict construction is particularly appropriate where, as here, the statute in question is in derogation of common law rights."))

Further, it is clear that Congress did not intend for franchisors and franchisees to be bound together indefinitely; rather, it was intended to "prevent abusive trade practices by franchisors, recognizing the disparity of bargaining power between the franchisors and the franchisees. The Act was not designed to create what is tantamount to a permanent estate in the franchise relationship." *Kostantis v. Exxon Corp., U.S.A.*, 663 F.2d 605, 606 (5th Cir.1981) (holding that decedent franchisee's spouse had no right to non-termination of the franchise agreement on the death of franchisee). Despite the obligations imposed on franchisors and the protections afforded franchisees, the PMPA obviously addresses the "legitimate needs of a franchisor to be able to terminate a franchise based on ... changes in circumstances." Senate Report No. 95–731, 95th Cong., 2d Sess. 18–19, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 877, *cited in Russo*, 630 F.Supp. at 688–89. Thus, "franchisors may initiate changes in their marketing activities to respond to changing marketing conditions and consumer preferences." Senate Report No. 95–731, at 19, 1978 U.S.Code Cong. & Ad.News at 877, *cited in Russo*, 630 F.Supp. at 689; *see also Ames v. Texaco, Inc.*, 568 F.Supp. 1317, 1321 (W.D.Mi. 1983).

For the reasons stated above, it is this Court's conclusion that Shell's termination of the franchise agreement with Plaintiff, under the circumstances of this case, falls within the parameters of conduct which is permissible under the PMPA. The franchise was terminated pursuant to an event which, under the Act, rendered termination reasonable, *see* 15 U.S.C. § 2802(c). In view of the restrictive reading the statute must be given, and in light of the fact that Congress must have foreseen that, in certain cases where underlying leases expired, those premises would be replaced by other premises in the same vicinity, such a conclusion is in accord with the purposes of the PMPA. This Court cannot, under these circumstances, impose an additional obligation on Shell where Congress did not. *See Lugar*, 755 F.2d at 59.

Plaintiff's complaint also makes a claim that proper notice of the expiration of the lease and/or termination of the franchise agreement was not given. This issue is addressed in Defendant's motion, and is, therefore, before the Court at this time. Plaintiff's response to the motion raises no factual issue on the notice claim, and, further, does not respond to Defendant's contentions that the notice given was adequate. Because the propriety of the notice given is not contested at this time, this issue must also be decided in favor of Defendant. Accordingly, for reasons stated in this order, it is hereby

ORDERED that Defendant Shell Oil Company's Motion for Summary Judgment be, and is hereby, GRANTED and this case is DISMISSED WITH PREJUDICE.