**Roy K. HIFAI, dba Roy's Sunnyvale Shell, Plaintiff-Appellant,**

v.

**SHELL OIL CO., a Delaware corporation, et al., Defendants-Appellees.**

No. 81–4131.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 1982.

Decided May 2, 1983.

---

John Hawkins, Hawkins & Donahue, San Francisco, Cal., for plaintiff-appellant.

Karen R. Leviton, William J. Meeske, Latham & Watkins, Los Angeles, Cal., for defendants-appellees.

Before MERRILL, Senior Circuit Judge, BOOCHEVER, Circuit Judge, and SMITH, Senior District Judge.*

BOOCHEVER, Circuit Judge:

Appellant Roy K. Hifai, dba Roy's Sunnyvale Shell (hereinafter "Hifai"), brought this action against appellee Shell Oil Company (hereinafter "Shell") for claims arising out of the nonrenewal of a gasoline service station lease and dealer agreement between Shell and Hifai. Hifai alleged, *inter alia,* claims for relief from Shell's nonrenewal of the franchise based on noncompliance with the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2841 (Supp. IV 1980) (hereinafter "PMPA"). Cross motions for summary judgment were filed on the PMPA claims and the trial court ruled in favor of Shell. Hifai stipulated to dismissal of his remaining claims and here appeals the grant of summary judgment to Shell. We find that Shell complied with the PMPA and accordingly affirm the grant of summary judgment.

---

* Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation.

## FACTS

In 1959, Shell executed a lease with the joint owners of the subject premises, H. Taylor Peery Company and Pine and Company (hereinafter collectively "Peery"), for the site located at 505 N. Mathilda Avenue, Sunnyvale, California (master lease). After Shell leased the site, it built a service station. The terms of the master lease granted Shell an original fifteen year lease term and three five-year options to renew.

The initial term of Shell's master lease expired on November 4, 1974. Shell, however, exercised its option to extend the term for five years. To exercise the second option to renew, Shell was required to give the lessor notice of its intention to renew at least forty-five days prior to the last day of the original term or the then-current extension.

In the event Shell failed to notify Peery of its intention to extend the master lease, the term of the master lease was automatically extended from year to year unless either Shell or Peery gave the other party at least thirty days written notice before the end of the stated term of the current extension period. In the event the master lease terminated, provisions of Shell's master lease with Peery gave Shell the right to raze any or all of the buildings, improvements, equipment and other property within sixty days after termination of the lease.

Shell had an absolute right to sublease the premises under the terms of Shell's lease with Peery. Hifai operated a service station at the premises under a series of sublease and supply agreements (franchise agreements) with Shell beginning in 1969. In 1976, Shell determined that the service station was not economical. Hifai was informed in 1976 that Shell intended to terminate its lease with Peery. When Hifai learned that Shell no longer found its franchise profitable, he discussed the possibility of leasing the premises directly from Peery and continuing his business with Shell or another franchisor. Hifai's initial lease negotiations with Peery were unsuccessful. Hifai also attempted to purchase the improvements at the premises from Shell, but no agreement was reached. A subsequent offer by Shell to sell the improvements also resulted in no deal.

Hifai's most recent franchise agreements began on November 1, 1978 and continued through November 3, 1979. When the franchise agreements began in November 1978, Shell notified Hifai that the current term of its master lease expired on November 4, 1979, and that Shell would not extend the master lease and thus would not extend Hifai's franchise agreements beyond that date. Shell granted the one year franchise to Hifai in order to permit his operation to continue until the end of the master lease.

In January 1979, Shell again notified Hifai in writing that when its master lease expired on November 4, 1979, Shell would not extend or renew the lease, and, as a result, Shell would not be able to renew its franchise with Hifai. The notice also stated that in the event Shell did extend the master lease, the franchise agreement would also be renewed. After Hifai received Shell's notice, Hifai continued to negotiate with Peery regarding the possibility of leasing the premises directly from Peery.

Hifai failed to vacate the premises upon expiration of its sublease agreement with Shell. On November 6, 1979, Shell filed an action in state court for unlawful detainer to recover possession of the premises. During the period following November 6, 1979, Hifai continued to refuse to surrender possession of the premises to Shell. Hifai continued to negotiate with both Peery and Shell. Shell subsequently extended and modified the terms of the existing master lease with Peery on a month to month basis for the sole purpose of evicting Hifai.

In June 1980, Peery and Hifai executed a five year lease for the premises. Peery then notified Shell that the master lease was terminated. At the conclusion of its action for unlawful detainer, however, Shell regained possession by court order on June 13, 1980 and razed the improvements at the premises the following day.

In the trial court, both parties moved for summary judgment on the claims arising

from the alleged violations of the PMPA. The court granted Shell's motion and Hifai's remaining claims were dismissed by stipulation so this appeal could be taken.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, the appellate court's task is identical to that of the trial court. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir.1980). Viewing the evidence in the light most favorable to the non-moving party, the appellate court must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir.1980).

The material facts in the present case are not in dispute. Shell contends that its compliance with the PMPA was adjudicated in its state court unlawful detainer action and is barred from relitigation by *res judicata.* Hifai continues to assert that Shell did not comply with the PMPA when it did not renew Hifai's franchise. We address these issues below.

## DISCUSSION

### I.

#### Res Judicata

Shell contends that the final decision rendered in its favor in its unlawful detainer action in the California Court of Appeal operates as a bar to litigation of Hifai's PMPA claims. It appears from the appellate briefs and the complaint filed by Shell in the state court that the state court did not adjudicate Shell's compliance with the PMPA and may have actively avoided any such adjudication. The record before us is insufficient to make a definite determination.

In any case, we need not reach this issue. Shell raises the bar of *res judicata* for the first time on appeal. This court normally will not address arguments not properly raised in the court below, *Rothman v. Hospital Service,* 510 F.2d 956, 960 (9th Cir.1975), particularly when the pertinent record is not fully developed. *See United States v. Gabriel,* 625 F.2d 830, 833 (9th Cir.1980) (Wallace, J., concurring), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). Shell gives no explanation why an exception should be made in this case. Accordingly, we hold that Shell may not raise the issue of *res judicata* for the first time in this court.

### II.

#### The PMPA Requirements

Hifai contends that Shell did not comply with the PMPA in two basic respects. First, Shell did not satisfy the statutory justification for nonrenewal specified in sections 2802(b)(2)(C) and 2802(c)(4) (Supp. IV 1980) in that it did not actually lose control of the premises under its master lease on November 4, 1979, and second, the notice of nonrenewal required under section 2804 (Supp. IV 1980) was defective in that Shell did not accurately state the reasons for nonrenewal in its notice to Hifai. Although Hifai asserts that factual issues exist as to each of the above contentions, the basic facts are not in dispute. Each of Hifai's contentions is groundless.

#### A. Grounds for Nonrenewal Under Section 2802.

Section 2802(b)(2) of the PMPA provides several permissible grounds for termination or nonrenewal of a franchise. Shell relied on section 2802(b)(2)(C) as its statutory ground in not renewing the franchise agreements with Hifai. That section provides for nonrenewal upon

[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . . .

15 U.S.C. § 2802(b)(2)(C). Section 2802(c) (4) provides that the term "event" as used in section 2802(b)(2)(C) includes "loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease". 15 U.S.C. § 2802(c)(4).

Hifai contends that Shell did not comply with sections 2802(b)(2)(C) and 2802(c)(4) of the PMPA because Shell did not actually lose control over the premises as stated in its notice of nonrenewal. At the very least, Hifai contends, the evidence discloses an issue of fact as to whether Shell lost control, necessitating a trial. Hifai points to: 1) the fact that the master lease was automatically extended unless terminated by written notice, 2) the fact that Shell's unlawful detainer action after November 4, 1979 implied the right to control the premises, and 3) the fact that Shell executed a letter agreement with Peery to extend the master lease.

Hifai's contentions are without merit. The record discloses that Shell notified Peery in writing as early as December 1977 of its intention to terminate the master lease on the premises. That the letter agreement was required to extend Shell's possession of the premises evidences a mutual understanding by Shell and Peery that the master lease expired in November 1979.

The district court reasoned that Shell technically did lose the right to grant possession of the premises after the expiration of the master lease on November 4, 1979. The subsequent letter agreement with Peery was not made until January 1980. Further, the terms of the letter agreement clearly indicate that the purpose of the extension was not to grant possession to another subtenant, but to give Shell time to regain possession from Hifai. The record contains no evidence that Shell ever had any other intention than to terminate the master lease on November 4, 1979. Finally, Shell's unlawful detainer action resulted from Hifai's own misconduct in refusing to vacate the premises.

Hifai asserts that the legislative history of the PMPA supports his argument that Shell must actually lose control of the premises to comply with the PMPA. Hifai quotes a portion of Senate Report No. 95–731:

> [I]t is not intended that termination or non-renewal should be permitted based upon the expiration of a lease which does not evidence the existence of an arms length relationship between the parties and as a result of the expiration of which no substantive change in control of the premises results.

S.Rep. No. 731, 95th Cong., 2d Sess. 38, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 896. This quotation merely evidences an intent underlying the PMPA not to permit a franchisor to use section 2802(c)(4) as a means to end a franchise relationship with one operator while retaining control of the premises. No such situation is present in this case. Throughout, Shell acted in a manner which indicated a sincere intent to dispose of the premises and discontinue its use of the premises as a service station.

The trial court reasoned in the alternative, that even assuming *arguendo* that Shell did not technically lose the right to grant possession of the premises, Shell nonetheless complied with the requirements of section 2802(b)(2)(C). Section 2802(c) sets forth a number of examples of events by which nonrenewals are considered to be reasonable. The plain words of the statute indicate that the list of events in subsection (c) is not an exclusive list. Further, the legislative history states in that regard that,

> The enumerated list is not exclusive. Other events satisfying the statutory standards set forth in section [2802](b)(2)(C), but not enumerated in the list set forth in subsection (c) of section [2802], may nevertheless serve as a ground for termination or nonrenewal under section [2802](b)(2)(C).... Thus, a judicial determination may be made that an event, other than one enumerated in the list, or an event similar but not identical to one enumerated in the list, constitutes an event which is relevant to the franchise relationship as a result of which termination or nonrenewal is reasonable.

S.Rep. No. 731, 95th Cong., 2d Sess. 38, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 896. The present case differs from the ideal case under section 2802(c)(4)

only in that Hifai's misconduct required Shell to extend its agreement with Peery. The trial court properly found that on the facts of the present case there occurred an event similar but not identical to one enumerated in section 2802(c)(4) which rendered Shell's nonrenewal of the franchise reasonable.

Hifai argues that its actions do not justify the trial court's finding that Shell's nonrenewal was reasonable. Hifai argues that it was not guilty of misconduct. Hifai cites California law to the effect that Shell, as a tenant with only constructive possession, need not regain possession to surrender to the owner. *See Markham v. Fralick,* 2 Cal.2d 221, 223–24, 39 P.2d 804, 806 (1934); *Briggs v. Electronic Memories & Magnetic Corp.,* 53 Cal.App.3d 900, 906, 126 Cal.Rptr. 34, 37 (1975). This argument ignores Shell's real interest in recovering possession of the premises.[1]

Shell had a substantial investment in improvements on the premises. Under the terms of the master lease, Shell had a sixty day right of removal with respect to improvements placed on the premises by Shell running from the expiration of the master lease. If Shell failed to exercise its right of removal, it would forfeit the improvements. Thus Shell would have lost the right to dispose of those improvements if it had returned control of the premises to Peery without first regaining possession from Hifai, as Hifai asserts Shell should have done.

Hifai further contends that Shell was legally responsible for Hifai's conduct because of inconsistent and misleading statements. Nothing in the record supports Hifai's argument. The evidence in the record shows nothing but straightforward dealings on the part of Shell.

### B. The Notice Requirements Under Section 2804.

█ Section 2804 of the PMPA requires that prior to nonrenewal of any franchise, the franchisor must provide notice of nonrenewal to the franchisee. The notice must contain, *inter alia,* "a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor". 15 U.S.C. § 2804(c)(3)(A) (Supp. IV 1980).

Hifai contends that Shell failed to comply with this section in that the notice to Hifai did not accurately state the reasons for Shell's refusal to renew the franchise. Again, Hifai's contention rests on Shell's alleged failure to actually terminate its master lease with Peery and the letter agreement extending Shell's right to control the premises.

Hifai's position has no merit. The record clearly shows that Shell properly notified Hifai on numerous occasions of its intention to let the master lease with Peery expire and its intention not to renew the franchise. Further, the trial court found that the master lease did in fact expire on November 4, 1979 and that Shell lost the right to grant possession of the premises to Hifai on that date.

Hifai argues that the notice requirements must be strictly enforced because only through proper notice will a franchisee be able to determine if the grounds for refusal to renew a franchise relationship are legitimate. As we stated above, the facts of the present case indicate that Shell had adequate justification as required by the PMPA for nonrenewal. There is no evidence in the record to cast doubt on the veracity of Shell's reasons for refusing to renew the franchise agreement.

█ Hifai attempts to restate its argument concerning the grounds for nonrenewal by framing Shell's alleged failure to lose control of the premises as a defect in the PMPA notification requirement. Hifai's notice argument must fail for the same reasons that its section 2802(b)(2)(C) argument must fail. We hold that Shell properly gave notice of its intention to and rea-

---

1. Hifai also states that Peery gave Hifai permission to remain on the premises and continue business while negotiations with Shell and Peery were pending. The record discloses no evidence of such permission and the documents in the record cited by Hifai do not demonstrate such permission.

sons for not renewing the franchise agreement.[2]

### III.

### Conclusion

We conclude that the trial court correctly granted summary judgment to Shell on the issue of compliance with the PMPA in all respects. Hifai's reliance on a hypertechnical reading of the requirements of the PMPA swings too far toward protection of the franchisee and would penalize a franchisor who in good faith attempted to comply with the requirements of the Act but was thwarted by the conduct of the franchisee.

Accordingly, the trial court's grant of summary judgment is affirmed.

---

**2.** Hifai argues, for the first time on appeal, that Shell's notice of nonrenewal was not timely under section 2802(b)(2)(C) (Supp. IV 1980) (requiring that notice must be given not more than 120 days after the franchisor acquired actual or constructive knowledge of the event predicating nonrenewal). Hifai offers no reason why we should consider this issue which it failed to raise below. Accordingly, we do not address this issue.