FAIRCHILD, Senior Circuit Judge:
Frederick S. Wyle, a professional corporation, acting as the trustee in bankruptcy of Pacific Far East Line, Inc. (PFEL) and its wholly-owned subsidiary, Atlantic Bear Steamship Company (ATCO), appeals from the district court’s order affirming the bankruptcy court’s grant of summary judgments in two consolidated proceedings in favor of Mobil Sales and Supply Corp. (Mobil) and Texaco, Inc. (Texaco) and affirming the bankruptcy court’s denial of his motions for reconsideration of the summary judgments. We affirm the order of the district court.
On August 1, 1980 the trustee filed an action in the bankruptcy court against Mobil, and another against Texaco, alleging that payments made by PFEL and ATCO to Mobil and Texaco in the four months prior to PFEL’s January 31, 1978 and ATCO’s February 3, 1978 filings of Chapter XI petitions for reorganization were voidable preferences under Section 60 of the Bankruptcy Act.[1] During those four months Mobil received payment on eleven invoices totalling approximately $1 million and Texaco received payment on three invoices totalling approximately $200,000.
Section 60(a)(1) of the Bankruptcy Act defines a “preference” as:
a transfer ... of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
Section 60(b) further provides:
Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.
On December 6, 1982 Mobil and Texaco separately moved for summary judgment contending that there was no genuine issue of material fact as to whether Mobil or Texaco had reasonable cause to believe PFEL or ATCO was insolvent at the time of the transfers. Mobil and Texaco filed a joint memorandum of points and authorities in support of their motions for summary judgment. The following items were submitted in support of the motions:
(a) Affidavits from Mobil and Texaco sales and credit officials.
(b) PFEL’s Quarterly Report to its Shareholders, dated September 30, 1977.
(c) PFEL’s Form 10-Q filed with the Securities and Exchange Commission for the quarter ending September 30, 1977.
(d) A Dun & Bradstreet Report on PFEL, available to Mobil, dated August 29, 1977.
(e) A December 14, 1977 report prepared by Export Consulting Services analyzing PFEL’s financial condition.
(f) A December 16, 1977 supplement to the August 29, 1977 Dun & Bradstreet Report.
(g) Various newspaper articles from October and December of 1977 concerning PFEL’s financial condition.
In opposition to the motion the trustee did not offer any affidavits, but merely submitted two amended responses to Mobil *607 and Texaco interrogatories. The interrogatories asked for Wyle’s contentions and information as to Mobil’s and Texaco’s cause to believe PFEL was insolvent.
The amended response as to Mobil stated:
Plaintiff believes that Mobil Sales & Supply Corporation had reasonable cause to believe that PFEL was insolvent at the time Mobil received the transfers from PFEL. Plaintiff relies on the fact that rumors and reports of PFEL’s financial difficulties were circulating in the business community, especially in San Francisco. Moreover, plaintiff’s own discovery has shown that Mobil actually saw and had possession of newspaper articles concerning PFEL’s poor financial condition. Those newspaper reports found in defendant’s possession and supporting this contention are entitled and dated as follows: “Alioto Lays Out PFEL’s Bright Future,” October 31, 1977; “MA Rescues Troubled Ship Line,” December 21, 1977; and “PFEL Gets $1 Million Loan from U.S.,” December 23, 1977.
The three newspaper articles listed were among those submitted with Mobil’s summary judgment motion.
As to Texaco the amended response stated:
Plaintiff believes that Texaco had reasonable cause to believe that PFEL was insolvent at the time Texaco received the transfers from PFEL. Plaintiff has not completed its own discovery with respect to this matter. Among the facts on which plaintiff relies are that PFEL’s financial situation was common knowledge in the business community, especially San Francisco. Numerous newspaper articles were published about PFEL’s financial difficulties. Many creditors were shipping to PFEL on a “C.O.D.” basis, and PFEL was either very slow in or not paying its obligations. Plaintiff also believes discovery will show that Texaco made numerous telephone inquiries and personal visits to PFEL and others concerning PFEL’s financial viability and overdue payments to Texaco.
Bill Devereaux, Nelle Mitchell, and Norm Miller have knowledge of the facts above. These individuals are currently employed by plaintiff. The newspaper articles will be produced, but there are no documents showing that many creditors were shipping on a C.O.D. [basis].
After hearing the motions together, the bankruptcy court entered summary judgments in favor of Mobil and Texaco finding that Mobil and Texaco lacked reasonable cause to believe PFEL insolvent.
The trustee moved for reconsideration of the summary judgments pursuant to Bankruptcy Rule 923 and for an order permitting him 120 days to depose certain of Mobil’s and Texaco’s witnesses. The trustee contended that the summary judgments were improper because (1) Mobil and Texaco were barred from relying on PFEL’s statements concerning its financial condition, and (2) the credibility of Mobil’s and Texaco’s affiants raised genuine issues of material fact which could only be tested at trial. The trustee also moved for reconsideration based upon “newly discovered evidence,” including additional newspaper articles from the preference period and sworn declarations of PFEL employees and the trustee’s counsel. At the hearing before the bankruptcy judge on the motion to reconsider the trustee conceded that the material in the new affidavits was available at the time of the original summary judgment hearing. The bankruptcy court refused to reconsider its judgments.
The trustee then appealed to the district court. The district court, after reviewing the record on summary judgment, affirmed the bankruptcy court’s summary judgment orders. The district court then reviewed the bankruptcy court’s denial of the Motion for Reconsideration. The court applied an abuse of discretion standard to the bankruptcy court’s denial of reconsideration and decided that the bankruptcy court had not erred in applying the law or in finding that no newly discovered evidence existed and *608 thus had correctly refused to reconsider the summary judgments.
I
The trustee’s first contention is that the district court erred in applying a “clearly erroneous” standard of review to the bankruptcy court’s judgments and thereby unconstitutionally vested the non-Article III bankruptcy judge with too much power, relying on 1616 Reminc Ltd. Partnership v. Atchison & Keller, 704 F.2d 1313 (4th Cir.1983).[2] In his discussion the trustee fails to distinguish between the district court’s review of the summary judgment and its review of the denial of the motion to reconsider apparently alleging that the district court reviewed everything under a “clearly erroneous” standard. The trustee’s claim is entirely without merit.
In reviewing the bankruptcy court’s grant of summary judgments the district judge declared himself bound by the standard in Hifai v. Shell Oil Co., 704 F.2d 1425 (9th Cir.1983):
In reviewing a grant of summary judgment, the appellate court’s task is identical to that of the trial court. Viewing the evidence in the light most favorable to the non-moving party, the appellate court must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law.
Id. at 1428 (citation omitted). It is clear from the text of the district court order that that is exactly what the court did. The trustee received de novo review on the summary judgments.
The district court reviewed the bankruptcy court’s denial of the motion to reconsider under an abuse of discretion standard. The court noted that Bankruptcy Rule 923 made F.R.Civ.P. Rule 59 applicable to the trustee’s motion and that denial of such a motion may not be reversed absent manifest abuse of discretion. Walker v. Bank of America National Trust & Sav. Ass’n, 268 F.2d 16, 25 (9th Cir.), cert. denied, 361 U.S. 903, 80 S.Ct. 211, 4 L.Ed.2d 158 (1959).
In his motion to reconsider the trustee contended that the summary judgments were erroneous as a matter of law for two reasons: (1) because the credibility of Mobil’s and Texaco’s affiants could only be tested at trial, and (2) because Mobil and Texaco were not entitled to rely on PFEL’s own representations about its financial condition. In addressing these two questions the district court necessarily considered the motions for summary judgment de novo to determine if the bankruptcy judge’s legal conclusions were correct. A bankruptcy court’s conclusions of law are subject to de novo review. In re Comer, 723 F.2d 737, 739 (9th Cir.1984). The district court found that neither situation precluded summary judgment as a matter of law. We agree.
This court is mindful that summary judgment procedures should be used with care and restraint, Hutchinson v. United States, 677 F.2d 1322, 1325 (9th Cir.1982), particularly when state of mind or extent of knowledge are at issue. However, once the movant for summary judgment has supported his or her motion, the opponent must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting movant’s evidence at trial. Matter of Citizens Loan & Sav. Co., 621 F.2d 911, 913 (8th Cir.1980). Neither a desire to cross-examine affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment, unless other evidence about an affiant’s credibility raises a genuine issue of material fact. Nat. Union Fire Ins. Co., etc. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir.1983). See also, Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1220 (9th Cir. 1980). The trustee failed to offer any evidence that the affiants were untrustworthy and failed to demonstrate the existence of *609 a material issue of fact concerning their credibility.
The trustee’s contention that summary judgment is precluded because Mobil and Texaco were barred from relying on PFEL’s statements concerning its financial condition is similarly without merit. “While a debtor’s assurance of solvency ... is not necessarily controlling ..., it is sufficient to negate further inquiry when the creditor is without reason to suspect either the integrity, or the accuracy of the information____” Seligson v. Roth, 402 F.2d 883, 887 (9th Cir.1968).
The trustee also moved for reconsideration based upon “newly discovered evidence.” The district court found that the bankruptcy court appropriately denied reconsideration on this basis and did not abuse its discretion. We agree.
The district court relied on Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir.1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964), for the proposition that to support a motion for reconsideration of a grant of summary judgment based upon newly discovered evidence, the movant is “obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.” (Emphasis added.) See also Keene Corp. v. International Fidelity Ins. Co., 736 F.2d 388 (7th Cir.1984), aff'g, 561 F.Supp. 656 (N.D.Ill.1982); De Long Corp. v. Raymond Intern., Inc., 622 F.2d 1135, 1140 (3rd Cir.1980); Jensen v. Conrad, 570 F.Supp. 114 (D.S.C.1983). Counsel for the trustee admitted that the evidence he was offering was available before disposition of the motion for summary judgment. Therefore, as a matter of law under Engelhard, the trustee was not entitled to reconsideration based on that evidence. The bankruptcy court did not abuse its discretion in denying the motion to reconsider nor did the district court err in affirming the denial.
II
In reviewing the district court’s affirmance of the bankruptcy court’s grants of summary judgment to Mobil and Texaco, this court is also bound by the standard in Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir.1983). We must review all the evidence in the light most favorable to the non-moving party and determine whether the trial court correctly determined that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law.
To establish a voidable preference under Section 60(b) of the Bankruptcy Act, the trustee must show that Mobil and Texaco had reasonable cause to believe PFEL and ATCO were insolvent at the time of the payments in question. “A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor’s notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent.” 3 Collier on Bankruptcy, U 60.53 (14th ed. 1977). A debtor is insolvent under the Act “whenever the aggregate of his property ... shall not at a fair valuation be sufficient in amount to pay its debts.” Former 11 U.S.C. § 1(19); Hoppe v. Rittenhouse, 279 F.2d 3, 6 (9th Cir.1960).
During the four months preceeding PFEL’s and ATCO’s Chapter XI petitions— the period during which the allegedly preferential transfers were made — Mobil and Texaco each continued to deal with PFEL and ATCO on a credit basis and continued to supply fuel to PFEL and ATCO ships. During that four month period PFEL and ATCO made regular payments of past invoices within an average of sixty days and their regularity of payment did not deteriorate. Neither Mobil nor Texaco requested collateral or special payment arrangements.
Mobil and Texaco each submitted two affidavits from employees closely connected to the PFEL and ATCO accounts in support of the motions for summary judgment. All of the affiants swore that they *610 believed PFEL was solvent and that its assets exceeded liabilities and further that they had not received any information that led them to believe that PFEL was insolvent or unable to pay its debts. (All of the affiants noted that they referred to PFEL and ATCO collectively as “PFEL.”)[3]
John Ehrenreich, one of Mobil’s affiants, was the assistant credit manager. His responsibilities were to review the accounts and customers of Mobil and review the available information concerning the creditworthiness of such customers. Attached to Mr. Ehrenreich’s affidavit were three credit reports concerning PFEL. The first was a Dun & Bradstreet Report dated August 29, 1977, approximately one month prior to the preference period. The report showed PFEL’s assets exceeded liabilities by $30 million and referred to the improved financial condition of the company. The report stated that the company had some cash flow problems and was slow in paying suppliers but that management claimed that payments had become more prompt. The report noted that the local bank of account continued to make available a line of credit secured by receivables which line had been increased to $4 million and that the bank felt the company could and would generate sufficient revenues to justify the increase. The report recommended that the account be watched closely but concluded that “[t]he vessels are worth much more than statement value so the possibility of loss is remote.” The second report, prepared by Export Consulting Services, analyzed PFEL’s financial condition and was dated December 14, 1977. The report concludes that, “[t]his company is now in a fairly strong financial position for credit trading at the proposed level [$1 million].” At about the same time Mobil received the third report attached to Mr. Ehrenreich’s affidavit, a supplemental report from Dun & Bradstreet dated December 16, 1977. The report indicated a decline in PFEL’s working capital and an increase in debt and suggested that Mobil continue to watch the account closely and keep payments as current as possible. The report also stated that PFEL’s assets exceeded liabilities by $21 million.
Mobil’s other affiant, John Gatti, was a division chief engineer in charge of sales and deliveries of fuel oil. Orders were placed through Gatti, deliveries were made through him, and PFEL sent payments to Gatti who then forwarded them to Mobil in New York. Mr. Gatti indicated that he frequently talked with PFEL officers and employees having direct or supervisory responsibility for payments owing to Mobil. He stated that at no time did any of these officers or employees indicate that PFEL was insolvent or unable to pay its debts and that they assured him that PFEL was financially sound and would continue to pay its obligations in full. Mr. Gatti believed PFEL’s assets exceeded liabilities and believed PFEL’s ships were of much greater value than PFEL’s outstanding liabilities. Gatti attached four newspaper articles about PFEL published during the preference period which confirmed this belief: “Alioto lays out PFEL’s Bright Future,” October 31, 1977; “MA Rescues Troubled Ship Line,” December 21, 1977; “PFEL gets $1 Million loan from U.S.,” December 23, 1977; and “A New & Happier Song at PFEL,” December 23, 1977. The articles mention PFEL’s troubled financial condition, but attribute PFEL’s problems largely to the $26 million conversion of four LASH (lighter-aboard ship) vessels to containerships which were expected to yield increased revenues in 1978. The two articles of December 23,1977 were printed in the same issue of the Commercial News and the “New & Happier Song” article reported that PFEL earned a profit in November 1977.
*611 Texaco’s affiants, Robert Fox, a marine engineer with responsibilities similar to John Gatti’s, and Daniel F. Moro, Texaco’s credit analyst, made similar attestations in their affidavits. Mr. Fox indicated that one of his responsibilities was to call PFEL on a monthly basis to obtain payment of the outstanding balance due. PFEL’s response to these calls was to pay its outstanding invoice in full. At no time did any of the PFEL officers or employees contacted by Mr. Fox indicate that PFEL was insolvent or unable to pay its debts. PFEL had a $500,000 credit limit with Texaco and always remained within that limit. Mr. Fox swore that at no time prior to January 31, 1978 did he hear or read anything from any source which led him to believe that PFEL was insolvent or unable to pay its debts.
Mr. Moro’s responsibilities as credit analyst included reviewing the accounts of customers of Texaco, including PFEL and ATCO, and reviewing the available information concerning the credit-worthiness of such customers. He indicated that at the time before PFEL filed its Chapter XI petition, from the information available to him, he believed PFEL was solvent and its assets exceeded its liabilities. He noted that in the four months preceding January 31, 1978 there was no significant deterioration in the promptness of PFEL’s payments. PFEL paid one invoice for $136,629.82 on December 8, 1977 after fifty-seven (57) days and another for $64,319.50 on December 31, 1977 after only thirty-one (31) days. Mr. Moro stated, “Thus, as to the larger invoices, the time between the invoice and payment significantly decreased during this period.”
In addition to the four affidavits and the attached financial reports and newspaper articles, Mobil and Texaco submitted PFEL’s quarterly report to its shareholders for the quarter ending September 30, 1977 and its 10-Q report to the Securities and Exchange Commission for the quarter ending September 30, 1977. Both showed increased revenues and an excess of assets over liabilities of over $20 million.
In response the trustee submitted no evi-dentiary material, only the two responses to interrogatories quoted earlier. They asserted that rumors concerning PFEL’s financial difficulties were circulating in the business community of San Francisco that Mobil and Texaco must have been aware of and that three of the articles attached to Gatti’s affidavit referred to PFEL’s poor financial condition.
The trustee alleges that it is impossible to determine from the evidence before the court on summary judgment what the extent of Mobil’s and Texaco’s knowledge was in order to determine if they had reasonable cause to believe the debtor insolvent. The trustee points out that Mobil and Texaco fail to include affidavits from other creditors, banks, credit bureaus, the Maritime Administration, etc. and thus the court cannot determine the extent of their knowledge. The trustee argues that “When extent of knowledge is the issue, there can be no summary judgment.”
In determining what the creditors had reasonable cause to believe about PFEL’s solvency the court must look at the objective information available to the creditors at the time of the alleged preferences. Mobil and Texaco presented such objective information in the form of credit reports, newspaper articles and financial statements with their affidavits. That information did not suggest that the debtors were insolvent nor would it prompt a prudent person to inquire further about the debtors’ solvency. The sources of Mobil’s and Texaco’s information were reliable and public. Their dealings with PFEL and ATCO during the preference period were normal,[4] and the affiants were the people *612 in the Mobil and Texaco organizations who would be most aware of problems with a debtor’s solvency if there were any. The evidence presented by Mobil and Texaco was sufficient to establish that they did not have reasonable cause to believe PFEL or ATCO insolvent.
The trustee failed to present any evidence, he merely relied on what is at best a restatement of his pleadings. He contends that this court cannot rely on the Mobil and Texaco affidavits to establish that the creditors did not have reasonable cause to believe the debtors insolvent because there may be information the creditors knew or should have known that the affidavits do not reveal. If that is the case, the burden was upon the trustee to bring evidence of such information to the court’s attention to raise an issue of material fact concerning the extent of the creditors’ knowledge. Nat. Union Fire Ins. Co., etc. v. Argonaut Ins. Co., 701 F.2d at 97; Vaughn v. Tele-dyne, Inc., 628 F.2d at 1220; Avila v. Travelers Ins. Co., 651 F.2d 658, 660 (9th Cir. 1981); Matter of Citizen Loan & Sav. Co., 621 F.2d at 913. “When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” F.R.Civ.P. Rule 56(e). The trustee presented no such specific facts.
The trustee’s assertions about rumors circulating in the San Francisco business community do not preclude summary judgment. Such bald assertions, absent any evidentiary base, are insufficient to create a material issue of fact concerning the creditors’ reasonable cause to believe PFEL insolvent. See Mack v. Bank of Lansing, 396 F.Supp. 935, 942-43 (W.D. Mich.1975). The newspaper articles mentioned in the amended interrogatory response also fail to raise a material issue of fact precluding summary judgment. While the articles do mention PFEL’s financial difficulties, none gives rise to serious doubt of PFEL’s solvency.
The record demonstrates that Mobil and Texaco lacked reasonable cause to believe PFEL or ATCO insolvent and were entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the district court.
Ill
The trustee’s final argument is that the bankruptcy court erred in denying his request for additional time for discovery to depose appellees’ affiants and that the district court erred in its affirmance. We disagree.
There is no evidence that the trustee was denied the opportunity to depose the affiants. There were six weeks between the filing of the motions for summary judgment and the hearing. The trustee had the affidavits available to him at that time and failed to make a request, pursuant to F.R.Civ.P. Rule 56(f), for a continuance to permit affidavits to be obtained or depositions to be taken. After the summary judgments were granted, the trustee requested leave to take depositions.
The reason the trustee cites for not taking the depositions earlier was that he was awaiting the outcome of maritime lien litigation concerning the oil companies in another court that could affect this case and he therefore wanted to conserve bankruptcy assets. However, a party opposing summary judgment is required to provide “specific facts” showing that there is a genuine issue of material fact for trial, or explain why he cannot immediately do so. F.R.Civ.P. Rules 56(e) and 56(f). The trustee failed to comply with the provisions of Rule 56. “The [plaintiff] can hardly argue at this late date that the district court abused its discretion in ruling on the summary judgment in light of the fact that [plaintiff] itself failed to pursue the procedural remedy which the Federal Rules so clearly provided.” British Airways Bd. v. Boeing Co., 585 F.2d 946, 954 (9th Cir. 1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241, reh’g denied, 441 *613 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir.1981); Avila v. Travelers Ins. Co., 651 F.2d 658, 660 (9th Cir.1981).
The cases cited by the appellant, Lucas v. Bechtel Corp., 633 F.2d 757, 759 (9th Cir.1980), and Timberlane Lumber Co. v. Bank of America, N.T. & S.A., 549 F.2d 597, 602 (9th Cir.1976), are inapposite. In Lucas, the court granted a motion to dismiss for failure to state a claim, but apparently considered affidavits and other matter outside the pleadings. Thus the court in reality granted summary judgment without allowing for sufficient fact gathering as provided in the rules. Similarly, in Tim-berlane a motion to dismiss for failure to state a claim was made, but matters outside of the pleadings were introduced. The court held that in that situation Rule 56 treatment was appropriate. In this case the trustee had every opportunity to take advantage of the provisions of Rule 56 and failed to do so.
AFFIRMED.

. The present actions are governed by the standards of the Bankruptcy Act of 1898. See Bankruptcy Reform Act of 1978, Section 403 of Pub.L. 95-598, Title IV, 92 Stat. 2683, 11 U.S.C. prec. § 101. The new Act has substantially different criteria for determining whether a voidable preference has occurred. See 11 U.S.C. § 547; 4 Collier on Bankruptcy, If 547.03[2] (15th ed. 1982).

. Reminc has not been followed in this circuit. See In re Comer, 723 F.2d 737, 739 (9th Cir. 1984) ("this court reviews the bankruptcy court’s findings of fact by the clearly erroneous standard”).

. In his reply brief the trustee argues that there is no evidence in the record concerning what either creditor knew about the financial condition of ATCO. However, it is clear from the affidavits that the affiants’ statements refer to both PFEL and ATCO as do the attached reports and newspaper articles. Furthermore, the financial statements submitted with the summary judgment motion are consolidated for PFEL and its subsidiaries, including ATCO. The evidence in the record speaks to both debtors.

. The trustee argues that since Texaco received payments from ATCO and PFEL even faster during the four month period, 57 and 31 days rather than the 60 days (Moro affidavit), the shorter time between invoice and payment could only mean Texaco was being preferred over other creditors. The conclusion that Texaco was being preferred is by no means obvious from two early payments and the payments did not give Texaco reasonable cause to believe PFEL or ATCO insolvent or cause to investigate their solvency.