Gauri DASS, a natural person; J.S.N.D., Inc., a California corporation, Plaintiffs—Appellants,

v.

TOSCO CORPORATION, a Nevada corporation, Defendant—Appellee.

No. 03–55732.
DC No. CV 02–05341 JFW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 18, 2005.

Decided April 25, 2005.

Leighton M. Anderson, Esq., Bewley Lassleben, et al., LLP, Whittier, CA, for Plaintiffs—Appellants.

Stephen Thomas Erb, Esq., San Diego, CA, for Defendant—Appellee.

Before TASHIMA and WARDLAW, Circuit Judges, and COLLINS, District Judge.*

## MEMORANDUM **

Gauri Dass and J.S.N.D., Inc. (together "Dass"), appeal the district court's grant of summary judgment in favor of Tosco Corporation ("Tosco"). Dass argues that Tosco's termination and non-renewal of their franchise relationship failed to comply with the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806, and that the district court therefore erred in denying Dass' request for a permanent injunction. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

▮ First, Dass argues that the district court erred in concluding, after a bench trial, that Tosco's termination and non-renewal of its franchise relationship with him was based on a ground enumerated by the PMPA, namely, the expiration of Tosco's underlying ground lease with Thrifty Oil Co. ("Thrifty"). Whether the termination and non-renewal of a franchise and the notice thereof comply with the PMPA is a question of statutory interpretation reviewed de novo. *See Svela v. Union Oil Co.*, 807 F.2d 1494, 1498 (9th Cir.1987). Under the PMPA, the termination or non-renewal of a franchise relationship must be based on a ground specified in the statute. 15 U.S.C. § 2802(a). One permitted ground is "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable," upon proper notice 15 U.S.C. § 2802(b)(2)(C); *Chevron U.S.A. Inc. v. El–Khoury*, 285 F.3d 1159, 1162 (9th Cir. 2002).

In defining such events, the act provides some examples, including the "loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease." 15 U.S.C. § 2802(c)(4). In *Hifai v. Shell Oil Co.*, 704 F.2d 1425 (9th Cir.1983), the franchisor entered into an agreement extending the ground lease on a month-to-month basis, past the expiration of the master lease, for the purpose of allowing the franchisor to evict the franchisee. *Id.* at 1427. We reasoned that, although the franchisor retained control of the premises, the franchisor technically had lost the right to grant possession of the premises after expiration of the master lease, and concluded that non-renewal of the franchise complied with the PMPA. *Id.* at 1429, 1431.

Here, like the franchisor in *Hifai*, Tosco became a holdover tenant under the terms of its underlying ground lease with Thrifty because the time required to perform the requisite environmental cleanup extended beyond the termination date of the lease. Regardless of whether Tosco lost control of the premises, like the franchisor in *Hifai*, Tosco technically lost the right to grant possession of the premises after expiration of the ground lease.[1] We there-

---

\* The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36–3.

**1.** The district court found that Tosco sincerely intended to surrender the premises to Thrifty. Dass has not adduced any evidence that

fore conclude that Tosco's non-renewal of the franchise relationship with Dass complied with the requirements of 15 U.S.C. § 2802(b)(2)(C).

■ Second, Dass contends that the district court erred in concluding that Tosco gave proper notice of non-renewal, as required by the PMPA. Dass argues that (1) Tosco did not disclose the duration of the underyling lease or the fact that it might expire during the term of the franchise, and (2) Tosco's notice of non-renewal was not given 90 days before termination, as required by the PMPA. Under the PMPA, where the termination or non-renewal of a franchise is based on the franchisor's loss of the right to grant possession of the leased marketing premises, the franchisor must notify the franchisee in writing, "prior to the commencement of the term of the then-existing franchise—(i) of the duration of the underlying lease; and (ii) of the fact that such underlying lease might expire and not be renewed during the term of such franchise ... or at the end of such term." 15 U.S.C. § 2802(c)(4)(A). Here, the district court found, and Dass does not dispute, that the 1997 Franchise Agreement explicitly disclosed the existence and duration of the underlying ground lease. Although the subsequent letter agreements extending the term of the 1997 Franchise Agreement do not disclose the existence and exact duration of the underlying lease, the relevant franchise was formed pursuant to the original 1997 Franchise Agreement. Each extension of the 1997 Franchise Agreement incorporated the terms of the initial agreement, and the

initial disclosure thus remained in force. Because the statute requires specific disclosure only "prior to the commencement of the term of the then existing franchise," we conclude that Tosco properly disclosed the existence and duration of the underlying lease. *See* 15 U.S.C. § 2802(c)(4)(A).

■ Dass also argues that the various notices of non-renewal violated the PMPA's requirements that (1) the notice state the date on which the termination of non-renewal takes effect, and (2) the notice be given not less than 90 days prior to the date on which such termination or non-renewal takes effect. The PMPA requires that a franchisor give the franchisee notice of termination or non-renewal of the franchise relationship "not less than 90 days prior to ... termination or nonrenewal." 15 U.S.C. § 2804(b)(1). Such notice must contain "the date on which such termination or nonrenewal takes effect." 15 U.S.C. § 2804(c)(3)(B). But, "[i]n circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date [of] ... termination or nonrenewal ... (A) such franchisor shall furnish notification ... on the earliest date ... reasonably practicable." 15 U.S.C. § 2804(b)(1). Here, Tosco gave an initial notice of non-renewal on June 1, 2001, providing Dass with 153 days written notice that the 1997 Franchise Agreement would not be renewed after October 31, 2001, due to the expiration of the underlying ground lease. Although Tosco and Dass subsequently extended the termination date of the 1997 Franchise Agreement through a series of

---

Tosco's decision not to exercise its five-year option to renew the ground lease was based on anything other than a sincere intent to surrender the premises, and the district court's finding therefore is not clearly erroneous. *See Chevron USA, Inc. v. Bronster*, 363 F.3d 846, 855 (9th Cir.2004) (stating that district court's findings of fact are reviewed for

clear error). Tosco's statement to Dass that "it is still Tosco's intention to negotiate with you concerning a new branded reseller agreement if you should successfully obtain a lease from Thrifty Oil Co. for this station property" is not inconsistent with Tosco's intent to terminate its own lessor-lessee relationship with Thrifty.

one-month extensions, the initial notice gave Dass "sufficient advance warning of the impending termination so that he [could] make appropriate arrangements." *Avramidis v. Arco Petroleum Prods. Co.,* 798 F.2d 12, 17 (1st Cir.1986) (citation omitted). Dass began searching for other sources of branded motor fuel for his station and thus clearly understood that the base term of the ground lease had expired, that the term of the lease was being extended only in one-month increments, and that Tosco likely would not continue the franchise relationship. We therefore conclude that the initial 153–day notice of non-renewal satisfied the notice requirements of the PMPA. *See id.* at 17–18 (concluding that 90–day notice requirement of PMPA was satisfied by initial notice that gave the dealer sufficient advance warning of impending termination, despite subsequent extension of termination date).

Third, Dass argues that the district court erred in not discussing the effect of Tosco's offer to renew the franchise ("2002 Franchise Agreement"), made after Dass filed this lawsuit. The district court's findings of fact and conclusions of law make no mention of the 2002 Franchise Agreement. We assume that the district court will, if appropriate, discuss the effect of the 2002 Franchise Agreement in considering Tosco's claim for damages, which the parties stipulated would be pursued through a post-appeal motion to execute on the security bond given under Federal Rule of Civil Procedure 65(c). Because the district court has not passed on the issue of whether the 2002 Franchise Agreement

was offered in good faith and in the normal course of business under the PMPA, we leave this issue for the district court to address in the first instance, upon consideration of Tosco's motion for damages. *See Reinkemeyer v. SAFECO Ins. Co.,* 166 F.3d 982, 985 (9th Cir.1999) (declining to address an issue not reached by the district court and not fully briefed by the parties, and noting that the parties may present the argument to the district court on remand); *Golden Gate Hotel Ass'n v. City & County of San Francisco,* 18 F.3d 1482, 1487 (9th Cir.1994) (observing the general rule that a district court should pass on an issue in the first instance and declining to reach the issue because the outcome was not beyond doubt).

Finally, Dass argues that the district court erred in raising the original amount of the Rule 65(c) injunction bond from $20,000 to $120,000.[2] We review the district court's determination of the amount and appropriateness of the security required under Rule 65 only for an abuse of discretion. *Save Our Sonoran, Inc. v. Flowers,* 381 F.3d 905, 915 (9th Cir.2004). The district court based its decision to increase the bond on a reasonable estimation of Tosco's potential damages resulting from the injunction. We conclude that the district court's determination was not an abuse of discretion. *See Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 733 (9th Cir. 1999) (concluding that district court considered the potential financial ramifications of injunction and that determination of bond amount was not an abuse of discretion).

---

**2.** We note that Tosco, in its reply brief, asserts that its motion to increase the amount of the bond, as a condition of the stay of judgment pending appeal, remains pending before this panel. A motions panel of this court, however, issued an order denying the request for additional security on April 2, 2004. A motion for reconsideration of an order entered by a motions panel must be filed within 14 days of the date of the order, unless the time is shortened or enlarged by order of this court, Ninth Cir. R. 27–10, and the time for the making of such a motion passed long ago. We therefore decline to consider Tosco's argument concerning additional security.

The judgment of the district court is therefore AFFIRMED.